Jack O'CONNOR and Dan O'Connor,
Plaintiffs-Appellants,

v.

PROPRIETORS INSURANCE COMPANY and CTH Aviation,
Defendants-Appellees.

No. 82CA0079.

Colorado Court of Appeals,
Div. I.

Sept. 30, 1982.

Rehearing Denied Oct. 21, 1982.

Certiorari Granted March 28, 1983.

Sherman & Howard, Michael A. Williams, Ellen W. Reath, Denver, for plaintiffs-appellants.

Paul D. Renner, P.C., Paul D. Renner, John R. Rodman, Denver, for defendants-appellees.

ENOCH, Chief Judge.

This is an action by plaintiffs to recover damages under an airplane insurance policy issued to plaintiffs by defendants. The trial court entered summary judgment in favor of defendants, and plaintiffs appeal. We affirm.

The following facts were stipulated. Plaintiffs owned and operated an aircraft

which was damaged in a crash on September 8, 1979. At the time of the accident, an insurance policy issued to plaintiffs by defendants covering damage to the craft was in full force and effect. The policy contained a provision excluding coverage while the craft was "operated in flight in violation of the terms of its F.A.A. Airworthiness Certificate or Operational Record...." In order to maintain the aircraft's Airworthiness Certificate, Federal Aviation Regulations require an annual inspection, to be performed by an Aircraft Inspector (AI), and a regular 100-hour inspection, to be performed by an Airframe and Powerplant mechanic (A & P). The craft had received a timely 100-hour inspection on September 22, 1978, but had not received an annual inspection within the 12 months preceding the accident. A 100-hour inspection and an annual inspection are identical, and the fact that the craft had had a 100-hour inspection from an A & P, but not an annual inspection from an AI had no causal relationship to the accident.

The absence of the required annual inspection formed the basis of the trial court's entry of summary judgment.

On appeal, plaintiffs concede that a technical violation of the regulations for Airworthiness certification existed because of plaintiffs' failure to give the craft a timely annual inspection. However, because this technical violation did not bear a causal relationship to the accident, plaintiffs contend that they should nevertheless recover. We disagree.

*Schantini v. Hartford Accident & Indemnity Co.*, 43 Colo.App. 79, 605 P.2d 920 (1979) is dispositive here. Where there is a violation of an express term of an insurance policy and the policy specifically excludes coverage in the event of such a violation, as in this case, the insured is not entitled to recover, and the insurance company incurs no contractual liability, even though there is no causal relationship between the violation and the accident. Because the policy at issue precludes coverage when the aircraft has not had an annual inspection as required to maintain its Airworthiness Certificate, and because it was stipulated that such was the case here, the trial court was correct in entering summary judgment in favor of defendants.

Judgment affirmed.

PIERCE, J., concurs.

COYTE, J., dissents.

COYTE, Judge, dissenting.

I dissent.

The majority opinion uncritically applies the rule of *Schantini v. Hartford Accident and Indemnity,* 43 Colo.App. 79, 605 P.2d 920 (1971), that a violation of the express terms of the exclusionary provisions of a contract for insurance bars recovery by the insured even though there is no causal relationship between the violation and the accident. I am still of the opinion that *Schantini* was wrongly decided and that the application of the rule announced therein leads to improper and unjust results.

The stipulated facts of this case graphically illustrate the harsh results of the application of the rule in *Schantini.* The sole basis for denial of coverage under the exclusion provision of the policy in this case was that the 100-hour inspection on September 22, 1978, was not designated as an annual inspection and was not performed by an Aircraft Inspector. It was stipulated that: "Although different persons are authorized to perform the types of inspections, the scope and detail of the inspections are exactly the same in all respects." Furthermore, the trial court found that under F.A.A. Regulations it is possible that a 100-hour inspection may be substituted for an annual inspection if it is performed by a person authorized to perform annual inspections and is entered as an annual inspection in the record. There is nothing in the stipulated factual record to show that aircraft inspectors who are authorized to perform

annual inspections are any more skilled or qualified by way of education, training, or experience than are Aircraft and Powerplant Mechanics who are authorized to perform 100-hour inspections. As the trial court stated in its findings and conclusion, "There is nothing in evidence that explains why the precisely identical procedures done by an A & P are not as satisfactory or of less merit than if done by an A.I." Here, there was compliance in substance but not with the strict letter of the F.A.A. regulations.

The result in this case points out the importance for requiring a causal connection when dealing with an exclusion broadly applicable to all existing F.A.A. regulations. As I stated in my dissent in *Schantini, supra,* Federal Regulations are so numerous and technical that there is virtually no plane crash that does not occur without the violation of at least one regulation. Logic and sound public policy dictate that insurance carriers not be allowed to deny coverage by invoking an exclusion clause that is triggered by a violation of such regulations where there is no causal connection between the claimed violation and the accident.

In my opinion the better reasoned approach requires that the exclusion provisions of aviation insurance policies should be interpreted in a manner similar to other policy provisions that deny coverage whenever the insured's death involves a violation of law. In interpreting such provisions, "[T]he majority rule is to the effect that there must be a causative connection between the violation of law and the injury received." 1 *A.J. Appleman, Insurance Law and Practice,* § 511. *See Penn. Mutual Life Ins. Co. v. Gibson,* 160 Colo. 462, 418 P.2d 50 (1966). Courts in other jurisdictions take such an approach. *Security Mutual Life Ins. Co. v. Hollingsworth,* 459 P.2d 592 (Okl.1969); *South Carolina Ins. Co. v. Collins,* 269 S.C. 282, 237 S.E.2d 358 (1977). *See* also 1 *A.J. Appleman, supra,* § 602 (1979 supp.).

Accordingly, I would reverse the judgment of the trial court.